# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **MAUREEN MATTHEWS, Individually and as Executrix of the Estate of Keith Mathews, Deceased**<br>27750 Dunford Avenue<br>Westlake, OH 44145<br><br>   Plaintiff,<br><br>v.<br><br>**BUSINESSOLVER, INC.**<br>1025 Ashworth Road, Suite 101<br>Des Moines, IA 50265<br><br>   Defendant. | CASE NO.: _____<br><br>JUDGE _____<br><br>**COMPLAINT**<br><br>**(Jury Demand Endorsed Herein)** |

Plaintiff Maureen Mathews, individually and as Executrix of the Estate of Keith Mathews, for her Complaint against Defendant Businessolver, Inc. states and alleges as follows:

## BACKGROUND AND PARTIES

1.      Plaintiff Maureen Mathews ("Plaintiff") brings this action in her individual capacity and pursuant to R.C. 2305.21, as the duly-appointed Executrix of the Estate of Keith Mathews. This action seeks to enforce Maureen Mathews' rights individually as well as those of Keith Mathews' Estate as third-party beneficiaries of a contract entered into between PolyOne Corporation and Businessolver.

2.      PolyOne Corporation ("PolyOne") is an Ohio corporation, which holds its principal place of business at 33587 Walker Road, Avon Lake, Ohio 44012. At all times relevant, PolyOne sponsored benefit plans for its employees. The benefit plan at issue in this case provided life insurance coverage, including basic life insurance coverage and



EXHIBIT
A

optional supplementary life insurance coverage for an additional premium (hereinafter referred to as the "Plan"). PolyOne acted as a fiduciary of the Plan by, *inter alia,* accepting participants' enrollment forms for Plan benefits, informing Plan as to whether enrollment was properly completed, deducting premium contributions from participants' wages, informing participants regarding the necessity of any supplemental premium payments, and processing coverage elections for Plan participants.

3.      The Plan and its administration are governed and regulated by the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001, *et seq.*

4.      ERISA is "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Chao v. Hall Holding Co., Inc.,* 285 F.3d 415, 425 (6th Cir. 2002).

5.      At all times relevant, PolyOne, as sponsor of the Plan, owed fiduciary duties under ERISA to its employees that participate in the Plan and their beneficiaries including (a) a fiduciary duty to give complete and accurate information to Plan participants and their beneficiaries, and (b) a fiduciary duty not to provide misleading communications to Plan participants and their beneficiaries regarding plan administration, eligibility under a plan, and the extent of benefits under a plan.

6.      PolyOne was the "sponsor" of the Plan, as defined by ERISA § 3, 29 U.S.C. § 1002(16)(B). Prior to Mr. Mathew's battle with cancer and resultant disability leave, PolyOne was Mr. Mathews' full time employer, and a "fiduciary" for the Plan, as that term is defined in ERISA § 3, 29 U.S.C. § 1002(21).

7.    Businessolver is an Iowa corporation, which conducts significant business and derives substantial revenue from the State of Ohio. Businessolver provides human resource and employee benefits administrative services to clients in Ohio such as PolyOne, including in Cuyahoga County.

8.    Plaintiff's decedent Keith Mathews was a PolyOne employee for twenty-five years. At all times relevant, Mr. Mathews was a "participant" in the Plan, as that term is defined in ERISA § 3, 29 U.S.C. § 1002(7), enrolled in both the basic and optional life insurance coverages.

9.    Plaintiff is the surviving spouse of Keith Mathews, the duly-appointed Executrix of his Estate, and Keith Mathews' sole "beneficiary," as that term is defined in ERISA § 3, 29 U.S.C. § 1002(8), of the life insurance policies relevant to this action.

<u>JURISDICTION AND VENUE</u>

10.    This Court has jurisdiction over this action pursuant to Ohio Revised Code § 2307.382, *inter alia*, Defendant transacted business in Ohio and contracted to supply continuous services in Ohio by entering into services agreement that is the subject of this action.

11.    Venue is proper in this judicial district and division as the Defendant engaged in conduct that led to this claim for relief in Cuyahoga County, Ohio and part of the claim for relief arose in Cuyahoga County, Ohio. The false and misleading communications about Plan benefits giving rise to this case were directed by Defendant to Keith Mathews at his home in Westlake, Ohio.

## FACTUAL ALLEGATIONS

12.     At all times material, Keith Mathews' death benefit under PolyOne's free basic life insurance coverage was $103,000.00, and he paid an additional monthly premium adding the optional coverage in the amount of $309,000. Thus, Mr. Mathews' total death benefit equaled $412,000, and his designated beneficiary of those benefits was his wife, Maureen Mathews.

13.     On May 8, 2013, PolyOne entered into a Professional Services Agreement with Defendant Businessolver under which Defendant was to provide administrative services to PolyOne to facilitate the fulfillment of PolyOne's fiduciary duties owed to Plan participants, a copy of which is attached hereto as Exhibit 1 along with the Schedules to the contract relevant to this action.

14.     In 2017, Mr. Mathews became terminally ill and was placed on long-term disability. While on disability leave, PolyOne employees were entitled to remain on the company's group life insurance policies for a period of time by taking over the payment of their full insurance premiums.

15.     Under the terms of the Plan, all group life insurance benefits terminated nine months from the date of an initial disability if a "Waiver of Premium" request was denied.

16.     Under the terms of the Plan, all Plan participants were entitled to rights of conversion and portability of their life insurance coverage. Those rights provided Mr. Mathews the option to maintain his life insurance coverages, and convert them from group coverage to individual coverage, at such time as the group coverage terminates.

17.     In Keith Mathews' case, nine months from his initial date of disability - and therefore his group life insurance termination date - was January 4, 2018.

18.     On November 1, 2017, Defendant mailed Mr. Mathews correspondence purporting to "provide you with information on how to make monthly premium payments, premium payment due date, and other information pertaining to your continuation of benefits coverage." That correspondence included vouchers listing the premium that ostensibly had to be paid monthly through the end of 2017 to maintain both the group basic and optional life insurance coverage.

19.     On December 28, 2017, Defendant mailed Mr. Mathews a second correspondence purporting to "provide you with information on how to make monthly premium payments, premium payment due dates, and other information pertaining to your continuation of benefits coverage through PolyOne. That correspondence included vouchers listing the premium that ostensibly had to be paid monthly through the end of 2018 in order for Mr. Mathews to maintain both the group basic and optional life insurance coverages.

20.     Mr. Mathews reasonably relied on the November 1, 2017 and December 28, 2017 letters, and believed that, by mailing these vouchers to the address listed therein along with the displayed monthly insurance premium, his life insurance coverage would remain in force.

21.     On January 15, 2018 and March 15, 2018, Defendant mailed Mr. Mathews two more letters reminding him to pay his monthly premiums to keep his life insurance coverage in place.

22. In fact, from November 2017 through March 2018, in reliance on, and in accordance with, the four letters from Defendant, Keith Mathews faithfully paid his life insurance premiums per the instructions in the letters.

23. However, the letters and vouchers sent from Defendant to Mr. Mathews were false and misleading with respect to the steps that Mr. Mathews was required to follow in order to keep his life insurance coverages from February 5, 2018 forward.

24. Under the terms of the Plan, Mr. Mathews had 31 days from that date of termination to keep his life insurance coverage by converting his group life policy to an individual policy. In order to do so, the Plan required formal written application to the life insurance carrier, Liberty Mutual, followed by payment of the first premium to the Liberty Mutual within that 31-day period.

25. However, relying on the several letters from Defendant, Mr. Mathews did not avail himself of the Plan's terms regarding conversion, and instead followed the dictates of those letters.

26. As a result, Keith Mathews' basic and optional life insurance coverages terminated on January 4, 2018, and his right to convert those coverages expired on February 5, 2018, 31 days after they terminated.

27. Defendant failed to correct its mistake until April 2018, long after Mr. Mathews' conversion period lapsed. Mr. Mathews attempted to convert his insurance in mid-2018 but was rejected by the insurance carrier for not following the Plan's deadlines.

28. Keith Mathews succumbed to his terminal illness on May 24, 2019. As a result of Defendant's errors and omissions in performing its duties under the Professional

Services Agreement, the subject life insurance coverages were not in place on the date of Mr. Mathews' death, and Maureen Mathews was deprived of $412,000 in life insurance benefits.

## COUNT I
### (Breach of Contract as to Intended Third Party Beneficiary)

29.     Plaintiff realleges and incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 28.

30.     Defendant entered into a valid and binding Professional Services Agreement with PolyOne, the purpose and intent of which was to assist in the carrying out PolyOne's statutory duties owed to plan participants and their beneficiaries under ERISA, including the duty to provide plan participants and beneficiaries with complete and accurate information regarding plan administration, eligibility under a plan, and the extent of benefits under a plan.

31.     Among the fiduciary obligations of PolyOne served by Defendant's responsibilities under the Professional Services Agreement was the duty to provide participants with complete and accurate information necessary to make informed decisions regarding their benefits.

32.     Plaintiff's decedent Keith Mathews had a direct interest in Defendant's performance under the Professional Services Agreement, making him an intended third-party beneficiary of that contract.

33.     Moreover, as the beneficiary of Mr. Mathews' life insurance policy which was a focus of the services to be provided under the Professional Services Agreement,

Plaintiff Maureen Mathews had a direct interest in performance under the Professional Services Agreement, making her an intended third-party beneficiary of that contract.

34.     Defendant's failure to perform its contractual duties competently and ensure that correct information was provided to plan participant Keith Mathews constitutes a material breach of its agreement with PolyOne.

35.     Defendant's breach of contract deprived Plaintiff of the benefit of her husband's $412,000 life insurance policy, which she would have received upon his death.

36.     As an intended third-party beneficiary to Defendant's contract with PolyOne, Plaintiff has a right to enforce the contract against Defendant for damages suffered as a result of the material breach.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Maureen Mathews respectfully demands the entry of judgment as follows against Defendant Businessolver, Inc. in the amount of $412,000.00, plus interest, the costs of the action, and any other relief this Court deems just and equitable.

Respectfully submitted,

*/s/ Scott D. Perlmuter*
SCOTT PERLMUTER (0082856)
CHANCE DOUGLAS (0087958)
**TITTLE & PERLMUTER**
2012 West 25th Street, Ste. 716
Cleveland, OH 44113
Phone: (216) 308-1522
Fax: (888) 604-9299
scott@tittlelawfirm.com
chance@tittlelawfirm.com

*Attorneys for Plaintiffs*

## JURY DEMAND

A jury pursuant to Civil Rule 38(B) is hereby demanded for all issues.

/s/ Scott D. Perlmuter
SCOTT PERLMUTER (0082856)

## TO THE CLERK

   PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, AT THE ADDRESSES LISTED IN THE CAPTION OF THE COMPLAINT.

/s/ Scott D. Perlmuter
SCOTT PERLMUTER (0082856)

# PROFESSIONAL SERVICES AGREEMENT

This Professional Services Agreement ("Agreement") is made this 8th day of May, 2013 by and between PolyOne Corporation, an Ohio Corporation with an address of 33587 Walker Rd, Avon Lake, Ohio 44012 (hereinafter "PolyOne"), and Businessolver.com, Inc., an Iowa corporation, with a principal place of business at 1025 Ashworth Road, Suite 101, West Des Moines, Iowa 50265 (hereinafter "Service Provider"). For purposes of this Agreement, "PolyOne" shall include PolyOne and all Affiliates, as defined herein, whether now existing or established by investment, merger or otherwise, including the successors and assigns of such entities.

In consideration of the mutual covenants contained herein and for other good and valuable consideration, the parties hereto agree as follows:

## 1.    DEFINITIONS

Unless otherwise defined herein, capitalized terms used herein shall have the following meaning:

"*Affiliate*" means any individual, corporation, partnership, association or business located in North America that directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with PolyOne. The term "control" including the terms "controlling," "controlled by," and "under common control with" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting shares, by exercise of contract rights or otherwise.

"Acceptance Criteria" means those criteria and measurements established in the Statement of Work by which PolyOne will measure Service Provider's performance of the Services in determining whether to accept such Services or reject such Services, in either case in whole or in part.

"*Completion Schedule*" means a schedule for completion of the Services as set forth in the applicable Statement of Work, with such amendments thereto, as shall have been approved in writing by PolyOne and Service Provider.

"*Confidential Information*" means any information, whether or not protected by a patent or copyright, which has been provided orally or in writing by the disclosing party or any of its Affiliates to the receiving party pursuant to this Agreement and/or the Services. Confidential Information shall include all financial, business and strategic data pertaining to the disclosing party and its Affiliates, and all other data, information and records of or pertaining to the disclosing party's and its Affiliates' employees and customers, including but not limited to personal identifiers, names, addresses, telephone numbers, account numbers, account/transaction information, personally identifiable health information, customer lists and pricing information

POLY


PLAINTIFF'S EXHIBIT 1

and any other Non-Public Information as defined in the Gramm-Leach-Bliley Act, 15 U.S.C. 6801 et seq, together with any other information identified as Confidential when conveyed.

"*Deliverables*" means the deliverables set forth in each Statement of Work.

"*Dispute*" means any controversy or claim arising out of, or relating to, this Agreement (which includes any Statement of Work), the breach thereof, or the relationship of the parties.

"*Documentation*" means written materials, regardless of their media, providing information about the Deliverables or the Services or their use/implementation, provided in connection with the Services or the Deliverables under the Statement of Work.

"*Services*" means those services described in the applicable Statement of Work, including preparation and delivery to PolyOne of the Deliverables, with such amendments thereto as shall be approved in writing by PolyOne and Service Provider.

"*Specifications*" means specifications applicable to the Services set forth in the applicable Statement of Work.

"*Statement of Work*" means one or more statements executed by PolyOne and Service Provider specifying the Services to be provided by Service Provider, including, without limitation, the attached Schedules, Specifications, a Completion Schedule and compensation for the Services.

"*Transaction Documents*" will mean this Agreement, the Statement of Work, and any other documents applicable to the services.


2. **SCOPE OF SERVICES**


2.1    PolyOne's engagement of Service Provider to provide Services and Service Provider's acceptance of the engagement shall be evidenced by the parties' execution and delivery of a Statement of Work with respect to such Services. The Services provided under this Agreement will be used by or for the benefit of PolyOne and/or one or more Affiliates.

    2.1.1    Service Provider will prepare and provide to PolyOne reports, in a form agreed upon by PolyOne and Service Provider, according to schedules set forth in the Statement of Work. Such reports must be timely, accurate and comprehensive enough to assess, at a minimum, performance, service levels, and risks associated with the provision of Services hereunder.

2.2    Service Provider shall provide to PolyOne the Services in accordance with the applicable Transaction Documents. The Services shall be performed in accordance with the Completion Schedule. Time is of the essence in the performance of the Services.

POLYONE 002101

2.3     Service Provider shall not subcontract any part of the Services without the prior written approval of PolyOne.  Any subcontracting hereunder shall not relieve Service Provider of responsibility for the performance of all its obligations under the Transaction Documents or for responsibility for conformance of the Services to the Statement of Work.  As between PolyOne and Service Provider, Service Provider shall be responsible for the work and activities of each of its subcontractors, including compliance with the terms of the Transaction Documents.  Service Provider shall make all payments due to its subcontractors timely.

2.4     Service Provider shall have access to PolyOne facilities, to the extent necessary for Service Provider to perform the Services, subject to prior written approval by PolyOne and Service Provider's compliance with security, safety and other PolyOne rules, regulations and procedures.  To provide Service Provider's and Service Provider's subcontractors' employees with unescorted access to PolyOne facilities, such employees must successfully complete PolyOne's safety and security training.  PolyOne will provide the training at no-charge to Service Provider and its subcontractors, and Service Provider and its subcontractors will absorb at no charge the labor costs for such employees to take the training, currently estimated at 3-4 hours duration.

2.5     This Agreement does NOT nor shall it be construed to, relieve PolyOne of any of its fiduciary responsibilities to properly administer its group health plan(s) or any liability to conform such plan(s) to the provisions of the Internal Revenue Code, as amended, or the Employee Retirement Income Security Act, as amended.

3.      **ADDITIONAL SERVICES**

3.1     In the event that PolyOne requests services in addition to those specified in a Statement of Work, an amendment will be provided to PolyOne for its written approval.  Such additional Services will not be initiated, and PolyOne shall incur no obligations with respect thereto, until it signs the amendment.

3.2     Any change in pricing or additional fees shall be outlined in the amendment stating the changes being made.

3.3     Any Disputes, as defined herein, regarding amendments shall be resolved pursuant to Sections 16 and 17 of this Agreement.

## 4. COMPENSATION AND PAYMENTS

4.1    As full compensation for the Services, Service Provider shall be paid via ACH in accordance with $5^{th}/2^{nd}$ Proximo terms, meaning the invoices will be paid on the 5th day, or next banking thereafter, of the 2nd month following the month in which the invoice is dated.

4.2    Out-of-pocket expenses, as permitted by the applicable Statement of Work or authorized in writing by PolyOne, will be re-billed to PolyOne at cost, and will be reimbursed by PolyOne in accordance with its then-current travel and entertainment policies applicable to PolyOne employees traveling for similar purpose (to the extent applicable). Service Provider shall invoice PolyOne for such expenses no more than once each calendar month and such invoices shall be accompanied by sufficient receipts and detail to substantiate expenses, unless otherwise agreed to in the applicable Statement of Work.

4.3    Service Provider will submit invoices to the email address specified by PolyOne monthly for Services rendered as specified in the applicable Statement of Work. All properly submitted invoices will be due and payable as set forth in Section 4.1 above, provided there is no Dispute. PolyOne shall be entitled to withhold payments if, through no fault of PolyOne, the Services (including, without limitation, any Deliverables) are not provided in accordance with the applicable Transaction Documents or fail to conform to the Acceptance Criteria for such Services or Deliverables, when applicable. In addition PolyOne reserves a right to dispute charges. In either event, PolyOne may withhold payment of disputed amounts only, and will promptly supply an explanation detailing the basis for the dispute. Once the parties have resolved any dispute, PolyOne will promptly pay any disputed amount resolved against PolyOne.

4.4    In no event will PolyOne pay any taxes in respect of Service Provider's net income or property. Except for (a) fees expressly set forth in this Agreement; and (b) additional services or products that are clearly outside the scope of the Services specified in this Agreement and that are approved in advance in writing by PolyOne, no additional service fees, maintenance fees, transfer fees or fees of any nature shall be due or assessed by Service Provider in respect of this Agreement, without regard to (i) which Affiliates of PolyOne use the Services or Deliverables; (ii) which Affiliates of PolyOne benefit thereby; or (iii) whether PolyOne engages a third party to use the Services or Deliverables on behalf of one or more Affiliates of PolyOne.

4.5    Service Provider acknowledges that time is of the essence in the submission of any invoices to PolyOne in order to avoid reconciliation problems associated with aged invoices. PolyOne's' obligation to pay any invoice shall be subject to Service Provider's submission to PolyOne of such invoice in a timely fashion, in accordance with the Statement of Work, but in no event later than sixty (60) days after the date such Services and/or the provision of Deliverables are completed. Service Provider hereby forever surrenders, and forgives any invoice submitted after the passage of such sixty (60) day period.

POLYONE 002103

## 5. STAFF

5.1   Service Provider shall have the right to determine which of its employees, agents, representatives or subcontractors ("Staff") shall be assigned to perform Services under this Agreement.

5.2   Service Provider's Staff shall comply with all federal and state laws, as well as applicable PolyOne policies and procedures, including, but not limited to, those governing safety, health, environmental protection, security, harassment, and discrimination. Upon Service Provider's request, such policies and procedures will be provided to Service Provider, and all personnel used by Service Provider, directly or indirectly, will attend PolyOne's basic safety health and environmental training at no charge to PolyOne.

5.3   During the term of this Agreement, and for a period of six (6) months after termination of this Agreement, the parties shall not, directly, or indirectly, solicit, recruit, employ or otherwise retain any employee or consultant of the other party, without the express written permission from the party who currently employs the employee or consultant.

5.4   Service Provider will defend, indemnify and hold PolyOne harmless from and against any claim, damages, suit or proceeding brought by any employee of Service Provider or its subcontractor alleging injury or death arising or incurred in connection with the presence of such employee on PolyOne premises, except to the extent attributable to the intentional misconduct or gross negligence of PolyOne.

## 6. INDEPENDENT CONTRACTOR STATUS

The Service Provider is an organization of professionals using its own discretion and judgment in the completion of the Services. Service Provider acts in all respects as an independent contractor for PolyOne and does not have authority to bind PolyOne in any way. This Agreement does not evidence or constitute a joint venture or partnership between the parties. Service Provider is not an employee of PolyOne, and will not be entitled to any of the benefits accorded PolyOne employees including, but not limited to eligibility for medical, life, dental, short-term disability and long-term disability insurance, vacation and holiday pay, pension plan, or 401(K) plan. PolyOne does not agree to use Service Provider exclusively.

## 7. WARRANTIES AND REPRESENTATIONS

Service Provider warrants, represents and covenants that:

7.1   The Services shall be performed, and all Deliverables provided hereunder shall be provided, with care, skill and diligence in accordance with the standards recognized by the Service Provider's profession and in accordance with the terms of each Transaction Document.

POLYONE 002104

7.2    The Services and Deliverables shall be provided in accordance with, and shall at all times comply with, all applicable laws and regulations governing the Services and Deliverables, including all requirements regarding privacy and handling of PolyOne Confidential Information except as provided for in section 2.5 of this Agreement; and

7.3    It has the authority and ability to enter into this Agreement, to perform the Services hereunder; and

7.4    All Deliverables and Services hereunder will be completed and performed by fully trained,          experienced          and          qualified          personnel;          and

7.5    EXCEPT FOR UNDER THIS ARTICLE 7 AND AS PROVIDED FOR IN THE SCHEDULE ASSOCIATED WITH A SERVICE OR DELIVERABLE, SERVICE PROVIDER DOES NOT MAKE ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES TO    POLYONE    REGARDING    ITS    SERVICES    (INCLUDING    IMPLIED REPRESENTATIONS OR WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE) OR REGARDING THE MERCHANDISE WHICH MAY BE OFFERED OVER CUSTOMER'S WEBSITE OR WEB PAGES OR THAT CUSTOMER'S WEBSITE OR WEB PAGES SHALL BE UNINTERRUPTED OR ERROR-FREE.

7.6    Service Provider has no responsibility for screening, editing, or monitoring the data entry to the enrollment website.  PolyOne shall indemnify and hold harmless Service Provider from any and all claims and related expenses resulting from any incorrect data/information provided by PolyOne via direct data entry or import file.  Nothing in this section shall relieve Service Provider from the responsibility of assisting PolyOne in reviewing test file results and resolving initial error reports during system implementation.

8.    **LIMITATION OF LIABILITY**
      NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY CONSEQUENTIAL, PUNITIVE, SPECIAL OR INDIRECT DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF ANTICIPATED PROFITS, LOSS OF USE OR UTILIZATION OF FACILITIES, RESULTING FROM THE PARTY'S PERFORMANCE OR NON-PERFORMANCE OF ITS OBLIGATIONS UNDER THIS AGREEMENT, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES;  IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY AMOUNT IN EXCESS OF THE COMPENSATION, AS DESCRIBED IN SCHEDULE B, PAID TO AND RETAINED BY SERVICE PROVIDER FOR THE SERVICES RENDERED UNDER THIS AGREEMENT.

9. **TERMINATION**

9.1     The initial term of this Agreement will expire on December 31, 2016 however this Agreement or any Statement of Work may be terminated by PolyOne as follows:

9.1.1   Upon notice to Service Provider if (a) any Services are not fully completed in accordance with the applicable Statement of Work, or (b) Service Provider has otherwise materially breached any provision of this Agreement or applicable Statement of Work and failed to cure such breach within thirty (30) days written notice to Service Provider; or

9.1.2   In the event that Service Provider is a party to a bankruptcy or other insolvency proceeding, makes a general assignment for the benefit of its creditors or a receiver is appointed over a material portion of Service Provider's assets on account of Service Provider's insolvency, or Service Provider is otherwise unable to perform under this Agreement; or

9.1.3   In the event of the sale of all or substantially all of the assets of Service Provider or a merger or corporate reorganization of Service Provider ("Change of Control"). Service Provider shall promptly notify PolyOne of the consummation of any of the transactions described in this Section 9.1.3.

9.1.4   The parties hereto may terminate this Agreement at any time by mutual written consent.

9.2     In the event of termination of this Agreement pursuant to Section 9.1, Service Provider shall be entitled to the compensation and reimbursements as specified in Section 4 incurred up to the termination date for Services and Deliverables that have been completed in accordance with this Agreement and the applicable Statement of Work.

9.3     In the event of the expiration or termination of this Agreement for any reason, Service Provider shall, within fifteen (15) days, deliver to PolyOne, or at PolyOne's' sole option, destroy Confidential Information in Service Provider's or any subcontractor's possession or control. Service Provider shall upon PolyOne's' request, execute and deliver to PolyOne a certification from Service Provider and any subcontractor that all Confidential Information has either been returned to PolyOne or destroyed. Notwithstanding the foregoing, Service Provider may retain subject to the terms hereof an archived electronic copy of Confidential Information on back-up storage tapes to the extent its return or destruction is reasonably determined, in good faith, to be unduly burdensome by Recipient.

9.4     In the event of Termination or expiration of this Agreement for any reason, Service Provider shall cooperate with and assist PolyOne in effecting the orderly transfer of Services to a third party or the resumption of such Services by PolyOne. Such Services shall be provided at PolyOne's request for a period of  up to and including, but not more than  one hundred and twenty (120) days after the effective date of the termination or expiration of this Agreement

unless otherwise agreed by the parties. Payment for such Services shall be as mutually agreed to in writing between the parties, but shall not be any more than as provided in the applicable Statement of Work.

10. **INDEMNIFICATION**

10.1    Service Provider expressly agrees to defend, indemnify and hold PolyOne (and its agents, employees, shareholders and owners) harmless for any and all claims, suits, losses or demands, of whatever kind and description, specifically arising out of the following actions of Service Provider or its subcontractors: a) All patent, copyright, or trademark infringement or any other intellectual property claims associated with any "product" or "document" provided to PolyOne through the enrollment and eligibility PolyOne/Service Provider website and b)  Any error, act, omission, neglect, negligence, or professional liability associated with, originated by or arising out of any "Internet insurance transaction" (defined as the election or processing of insurance information conducted through the Benefitsolver application) conducted exclusively through the Benefitsolver enrollment and eligibility website.   Any claim or potential claim, presented to Service Provider by PolyOne under the terms of this Indemnification and Hold Harmless Section must be tendered, in writing, to Service Provider with a formal request to defend and indemnify PolyOne within fifteen (15) days after PolyOne receives such demand, complaint, notice or summons in writing.  At PolyOne's sole discretion and option, but with no obligation to do so, PolyOne may itself undertake the defense, litigation, settlement or satisfaction of any such claim, reserving its right to seek indemnification against Service Provider, provided that PolyOne shall not settle any claim without Service Provider's prior written consent.  It's the express intent of this paragraph that Service Provider will protect, defend and indemnify PolyOne for claims arising out of subparagraphs (a) and (b) above.

10.2    PolyOne warrants and represents that the information it supplies to the enrollment and eligibility site will not infringe upon any copyright, patent, trademark, trade dress or other intellectual property right of others.  PolyOne will indemnify and hold Service Provider harmless from any and all liabilities, damages, losses, costs and expenses, including attorney fees, arising in connection with or related to any such infringement.

11. **CONFIDENTIALITY**

11.1    All Confidential Information shall be treated by the receiving party as being the proprietary information of the disclosing party, and shall be held in strict confidence by the receiving party. Such information pertaining to disclosing party's customers shall remain at all times during and after the term of this Agreement the exclusive property of the disclosing party.

11.2    With respect to all such Confidential Information to be kept confidential pursuant to this Section, the receiving party shall (a) not provide or make available the Confidential Information in any form to any person other than those employees or contractors of the receiving party who have a need to know consistent with the authorized use of such Confidential Information; (b) not

reproduce the Confidential Information except for use reasonably necessary to the performance of this Agreement; and (c) not exploit or use the Confidential Information for any purpose other than as required for the performance of its obligations pursuant to this Agreement.

11.3    The receiving party shall not be liable (subject to any patent rights or copyrights of the disclosing party) for any use or disclosure of Confidential Information which:

  11.3.1  Was in the public domain prior to the receipt of same by the receiving party, or has subsequently become part of the public domain by printed publication or otherwise of general circulation except by the receiving party's breach of this Agreement or wrongful act; or

  11.3.2  Was in the receiving party's possession or known to the receiving party prior to its receipt hereunder as evidenced by written documentation and was not acquired directly or indirectly from the disclosing party; or

  11.3.3  Was received by the receiving party from a third party where the receiving party was without an obligation of secrecy with respect thereto and was not acquired directly or indirectly from the disclosing party; or

  11.3.4  Was independently developed by the receiving party without use of, access or reference to, nor any benefit of the disclosing party's Confidential Information.

The fact that information falling within one or more of the foregoing carve-outs discloses generally, but does not disclose the specifics of a particular item of Confidential Information will not operate to invoke the carve-out.

11.4    In the event that a subpoena or other legal process in any way concerning the Confidential Information is served upon the receiving party, the receiving party shall notify the disclosing party immediately upon receipt of such subpoena or other legal process and shall cooperate with the disclosing party in any lawful effort by the disclosing party to contest the legal validity of such subpoena or other legal process.

11.5    Service Provider shall establish and maintain, throughout the term of this Agreement, policies and procedures to ensure the safekeeping of PolyOne Confidential Information and prevent unauthorized access to or use of such Confidential Information.  If Service Provider discloses PolyOne Confidential Information to any subcontractor(s) as permitted herein, Service Provider shall maintain adequate controls to ensure that each subcontractor establishes and maintains measures to protect PolyOne Confidential Information in its possession.

11.6    The disclosing party shall not disclose to the receiving party any knowledge, data or information that a third party has indicated constitutes its Confidential Information, trade secrets or proprietary information.

11.7    All software and related documentation now owned or used by Service Provider or developed by Service Provider during the course of performing Services under this Agreement is and shall be the sole and exclusive property of Service Provider.  PolyOne shall make no use

whatsoever of any such software or related documentation after termination of this Agreement and shall not disclose any portion of any such software to any other person.

11.8   All data and documentation relating to the employer group membership will be the exclusive property of PolyOne.  Notwithstanding the foregoing, Service Provider may use data and information used in or derived from the operation of Customer's Enrollment and Eligibility site solely for the purpose of performing the Services.

## 12.   **ASSIGNMENT AND SUCCESSORS**

12.1   Neither party may assign or transfer this Agreement, in whole or in part, without the prior written consent of the non-assigning party, which approval shall not be unreasonably withheld, provided that either party may assign this Agreement to any entity which acquires or succeeds to all or substantially all of its assets.

12.2   This Agreement shall be binding upon the parties hereto, their heirs, successors, assigns and legal representatives, and references to Service Provider and PolyOne shall include their respective successors and permitted assigns.

## 13.   **PUBLICITY**

Service Provider shall not publish or use any advertising, sales promotion or publicity matters relating to this Agreement or any Services furnished or performed by Service Provider wherein PolyOne or any Affiliate's name and/or logo is mentioned or language is used for which the connection of such name may, in PolyOne's judgment, be inferred or implied, without the prior written approval of PolyOne, which may be withheld in PolyOne's absolute discretion.  Service Provider shall not disclose to any third party, other than its employees, representatives and attorneys that need to know, that PolyOne is a client of Service Provider, or the existence of this Agreement with PolyOne, or any of the terms and conditions of this Agreement.

## 14.   **SECURITY AND AUDITS**

14.1   Both parties shall procure, use, and maintain security tools and procedures consistent with applicable regulatory requirements, industry standards and designed to protect and safeguard PolyOne's data.

Service Provider shall have an independent and mutually agreed upon third party conduct a security test and audit at least annually and shall provide PolyOne with all such results from any security tests and audits.

POLYONE 002109

15. **DISASTER RECOVERY**

15.1 Service Provider shall maintain throughout the term of this Agreement a disaster recovery plan (the "Disaster Recovery Plan") in compliance with all regulatory requirements, which Disaster Recovery Plan shall cover all the Services. For purposes of this Agreement, "Disaster" means any unplanned interruption of operations which materially affects the ability of Service Provider to provide the Services.

15.1.1 The Disaster Recovery Plan shall provide that, following the declaration of a Disaster, Service Provider is able to resume all Services in accordance therewith utilizing a disaster recovery site, within the time periods specified in the Disaster Recovery Plan. PolyOne may terminate this Agreement in accordance with Section 9 in the event that Service Provider is unable to provide the Services in accordance with the Plan once PolyOne has provided notice of a Disaster.

15.2 Service Provider shall, at a minimum, confirm the appropriate operation of the Disaster Recovery Plan by conducting not less than one (1) test annually and shall provide PolyOne with a description of the test and the test results.

16. **INFORMAL DISPUTE RESOLUTION**

16.1 In the event of any Dispute under this Agreement, the parties shall meet and negotiate in good faith to attempt to resolve the Dispute. Each party shall appoint a designated representative. In the event that the Dispute cannot be resolved within ten (10) days of the date one party gave written notice of the Dispute to the other party, the Dispute shall be resolved in accordance with Section 17.

16.1.1 Service Provider shall continue to provide the Services and the Deliverables and PolyOne will continue to make payments to Service Provider pursuant to the applicable Statement of Work.

17. **Dispute Resolution** Each party irrevocably consents to the exclusive jurisdiction of the state and federal courts located in Delaware, in connection with any action arising under this Agreement, with the exception of a breach or threatened breach of confidentiality obligations, in which case PolyOne may bring a court action or file an injunction in any court of competent jurisdiction.

18. **INSURANCE**

18.1    Service Provider shall maintain during the term of this Agreement the following insurance:

> 18.1.1 Worker's Compensation and employers' liability insurance as prescribed by applicable law in the jurisdiction where performance of the Services occurs; and

> 18.1.2 Commercial general liability insurance (bodily injury and property damage) with contractual liability insurance to cover liability assumed under this Agreement. The limits of liability of such insurance shall not be less than $1,000,000 combined single limit occurrence with a self-insured retainage/deductible of not greater than $100,000; and

18.2    Upon the request of PolyOne, Service Provider shall deliver promptly to PolyOne certificates of insurance made out by the applicable insurer(s) or their authorized agents for the insurance required under this Section (the "Required Insurance") Service Provider shall provide thirty (30) days' prior written notice to PolyOne in the event of any termination, non-renewal or cancellation, or any material change in coverage or deductibles. All Required Insurance shall insure the interests of PolyOne regardless of any breach or violation by Service Provider or any other person. All Required Insurance must be primary and be required to respond and pay prior to any other available coverage. Service Provider, Service Provider's insurer(s) and anyone claiming by, through, under or on Service Provider's behalf shall have no claim, right of action or right of subrogation against PolyOne or its customers based on any loss or liability insured against under the Required Insurance. This Section shall not imply or impose any limitation upon the amounts that may be claimed by PolyOne. All required Insurance shall be carried with responsible insurance companies of recognized standing which are authorized to do business in the state in which the Services are rendered and are rated B+ VII or better by A.M. Best.

## 19.    **ENTIRE AGREEMENT**

This Agreement, all Exhibits and Schedules hereto and any Statement of Work referencing this Agreement constitute the entire and complete understanding between the parties and supersedes all prior and contemporaneous verbal and written agreements, communications and representations relating to the subject matter hereof. Its terms can be modified only by an instrument in writing signed by both parties.

## 20.    **WAIVER**

Any waiver of any breach of any provisions of this Agreement shall not be construed as a continuing waiver of other breaches of the same or other provisions hereof.

## 21.    **GOVERNING LAW; VENUE**

This Agreement has been made in and its validity, interpretation, construction and performance shall be governed by and be in accordance with the laws of the State of Delaware, without reference to its laws governing conflicts of law. In any such action, suit or proceeding, the successful or prevailing party shall be entitled to seek its reasonable attorneys' fees and other costs incurred in connection with that action, suit or proceeding, in addition to any other relief to which such party may be entitled, all in the discretion of the court or arbitration panel, as applicable.

22. **SEVERABILITY**

If any provision of this Agreement is adjudged by any court or arbitration board of competent jurisdiction to be invalid or unenforceable, then such provision shall be modified to the extent possible and necessary to preserve the original intentions of the parties, and the validity or enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

23. **FORCE MAJEURE**

Neither party shall be liable for any failure to perform any of its obligations under this Agreement during any period in which such failure to perform arises directly or indirectly out of an act of nature, acts of the public enemy, embargoes, insurrection, riot, or the intervention of any government authority (collectively, "Excusable Cause"), provided that the party so delayed immediately notifies the other party of such delay in writing and uses its best efforts to minimize the adverse effect of such events. If such failure by Service Provider exceeds or is reasonably likely to exceed a cumulative period of 30 days, PolyOne may terminate at its convenience. PolyOne shall not be liable to pay for any scheduled event that it and its agents, servants, employees, or subcontractors cannot attend or perform due to an Excusable Cause.

24. **NOTICES**

Notices and other communications hereunder shall be in writing, or by facsimile subsequently confirmed in writing and shall be given when actually received. Delivery of written notices may occur using certified/registered mail (postage pre-paid, return receipt requested), overnight courier providing signature proof of delivery, or personal (hand) delivery, in each case addressed as follows or to such other address as shall be provided in accordance with this Section:

To Service Provider:  Businessolver.com, Inc.

                      1025 Ashworth Road, Suite 101

                      West Des Moines, IA  50265

With a copy to:

POLYONE 002112

To PolyOne:        PolyOne Corporation

Attn: Human Resources

33587 Walker Rd

Avon Lake, Ohio  44012


FAX: 440-930-1448

Attn: Maureen Swain


With a copy to:    PolyOne Corporation

Attn: Secretary

33587 Walker Rd

Avon Lake, Ohio  44012


## 25.    **REMEDIES**

25.1    The remedies specifically provided for herein are intended to be cumulative and shall not be deemed to exclude any other right or remedy that either party may have at law or inequity.

25.2    The provisions of this Agreement relating to dispute resolution, privacy, indemnification, and confidentiality, shall survive the termination of this Agreement.


IN WITNESS WHEREOF, the parties have executed, or caused to be executed by their duly authorized representatives, this Agreement as of _*11 – 0 4*_____, 2013 intending that it thereby bind them to its terms.


PolyOne Corporation                      Businessolver.com, Inc.

POLYONE 002113

By: _____
                              HMH 11/12/13

By:_Ken Smith_____

Title:_CIO & CHRO_____

By: _____

By:____Jon L. Shanahan_____

Title:_President and C.E.O._____

POLYONE 002114

**SCHEDULE A (Continued)**

O.   Leave of Absence ("LOA") Billing Services

**Responsibilities of Businessolver:**
- Establish a process to collect premiums from LOA participants, deposit those premiums, and remit those premiums to the Customer on a monthly basis.
- Develop and send a notice of takeover letter to members on leave.
- Set up the billing module on the Benefitsolver application.  Set-up activities will include:
  - Plan Set-up
  - Rate Set-up
  - Eligibility Group Set-up
  - Direct Bill Rules/Parameters Set-up
- Build COBRA Census records for Qualified Beneficiaries from census files received from the previous administrator or client.

**Responsibilities of Customer:**
- Provide Businessolver with takeover documentation.  The documentation will include plan rates, plan information, and current members on leave.
- Provide up to three (3) Census files to Businessolver.

P.   Retiree Billing Services

**Responsibilities of Businessolver:**
- Process retiree deposit receivables and will deposit payments to the Businessolver account and ACH payment to the Customer on a monthly basis.
- Develop and send a notice of takeover letter to current retirees.
- Set up the billing module on the Benefitsolver application.  Set-up activities will include:
  - Plan Set-up
  - Rate Set-up
  - Eligibility Group Set-up
  - Direct Bill Rules/Parameters Set-up
- Build individual COBRA Census records for Qualified Beneficiaries from census files received from the previous administrator or client.
- Request up to three (3) Census files from Customer.

**Responsibilities of Customer:**
- Provide takeover documentation, which shall include plan rates, plan information, current retirees, and pending retirees.

POLYONE 002115

## SCHEDULE A (Continued)

**II. Ongoing Services**

Service Provider and PolyOne shall continue to maintain service selections by mutual agreement, as recorded below and in the PolyOne Playbook and the Project Plan. A copy of each, with updates, shall be available at all times to PolyOne upon reasonable request. Any changes shall not modify or have precedence over the terms of the Enrollment & Eligibility Services Agreement, unless expressly agreed to, in writing, and signed by both parties.

A. Data Export Services

**Responsibilities of Service Provider:**
- Provide weekly eligibility file updates from the Service Provider system to the following vendors/providers*:
  - Medical – Anthem, Extend Health
  - Prescription – CVS Caremark
  - Dental – Delta Dental
  - Vision – Blueview/Anthem
  - Life/LTD and Voluntary Life/AD&D/LTD – Liberty Mutual
- Provide an ongoing carrier integration with available web services listed below:
  - Basic & Voluntary Life/AD&D – Liberty Mutual (EOI Web Services)
  - Single Sign-on – Anthem and Delta Dental
- Applicable Terms:
  - All weekly file transactions are reviewed daily to ensure that the files are successfully transmitted.
  - All errors identified during file transmission are updated on the export dashboard daily to reflect resolution and/or the process for addressing the error.
  - All files scheduled to run on any business day are sent before end of business that same day.*

  *Service Provider cannot guarantee the quality of file exports when changes or modifications to file formats or data values occur without prior notification from the carrier and/or client*

B. Ongoing Data Import Services

**Responsibilities of Service Provider:**
- Load ongoing census files to Benefitsolver via the online transmit file interface or through FTP.
  - Files imported in this manner will result in a processing report for PolyOne's review, which identifies the number of additions, changes, deletions and any errors that occurred during the file import process.
  - Required fields not provided by PolyOne will be defaulted where feasible.
- Inform PolyOne of import modifications that fall outside of Service Provider standard services. Service Provider will inform PolyOne of any additional programming costs.
- Establish ongoing imports from the following PolyOne system(s):
  - SAP

**Responsibilities of PolyOne:**
- Define desired import parameters, import format, and import frequency based on the existing PolyOne data.
- Review/update all missing or defaulted data.
- Review and resolve errors reported by Service Provider in relation to the import file. Every time an import is performed, the Service Provider system will generate an error log and a change log.

C. System Training

**Responsibilities of Service Provider:**
- Provide one of the following training modules each week via web training sessions:
  - Navigation
  - Administration functions
  - Tools & resources
  - Advanced administration functions
  - Reports
  - Layout manager
  - Exports
  - COBRA
  - Billing
  - Payroll

**SCHEDULE A (Continued)**

C.  System Training (continued)

- Training modules will take approximately one hour per module and will take place via web conference call on the Trainingsolver system.

D.  Payroll File Processing

**Responsibilities of Service Provider:**
- Review, on a daily basis, all payroll file runs to ensure that the files are successfully processed.
- Update, on a daily basis, all errors identified during file transmission on the payroll dashboard to reflect resolution and/or the process for addressing the error.
- Send all files scheduled to run on any business day before end of business that same day.*

  *Service Provider cannot guarantee the quality of payroll file run times when changes or modifications to file formats or data values occur without prior notification from the client or payroll provider.*

E.  Account Management

**Responsibilities of Service Provider:**
- Provide service assistance to PolyOne on the following issues, from 7:30 am to 5:30 pm CST:
  - System training and support services
  - System troubleshooting assistance and support
  - Support Administrator set-up and maintenance support
  - Assistance with the review of export reports on an ongoing basis

**Responsibilities of PolyOne:**
- Appoint a designated support contact person(s) (up to a total of five persons) for purposes of contacting Service Provider regarding Maintenance and Support issues, including reporting technical support issues via phone, email, or through the case manager tool.

F.  System Reporting

**Responsibilities of Service Provider:**
- Set up scheduled reports, or PolyOne may obtain reports as needed, through the Benefitsolver website.
- Set up the standard reporting module for PolyOne.  The standard module includes the following report types*:
  - Employee Census Benefit Report
  - Employee Census Report
  - Submitted Changes Report
  - Dependent Census Benefit Report
  - Employee Directory Report
  - EEO-1 Report
  - New Hire Report
  - Employee Termination Report
  - Payroll Deduction Changes Report
  - Open Enrollment Status Report
  - Address Change Report
  - Beneficiary Designation Report
  - Demographic Change Report
  - Payroll Deduction Audit Report
  - Evidence of Insurability Report
  - Initial Enrollment Status Report
  - Employment Change
  - Dependent verification reports
  - QMCSO reports
  - COBRA/Direct Billing report

POLYONE 002117

**SCHEDULE A (Continued)**

G.  Security, Data encryption, System availability

**Responsibilities of Service Provider:**
- Service Provider uses a combination of firewalls, data encryption, physical data protection, database activity logging and application-level security to provide a secure data enrollment.
- Service Provider uses 128-bit secure socket layer (SSL) technology and digital certificates to encrypt and authenticate transactions.
- Benefitsolver system availability:
    - The Benefitsolver system will be available no less than 99.5% of the time per month excluding unavailability due to exclusions to the definition of server downtime (as defined below)
    - Server downtime means any interruption of ten (10) minutes or more in the availability of the Benefitsolver system; provided, however, that server downtime shall not include time that is attributable to:
        - o PolyOne's breach of its material obligations under the Agreement, which breach causes the server or site to be unavailable;
        - o Failure or malfunction of any PolyOne provided equipment or service;
        - o Other mutually agreed to pre-scheduled system down-time; and
        - o Scheduled system maintenance down-time.
            - i. Scheduled system maintenance down-time shall mean any interruption in the availability of the system due to system maintenance scheduled more than 48 hours prior to the disruption of service.
            - ii. Scheduled system maintenance will not exceed 6 hours per month and will occur between the hours of 12:00 a.m. and 4:00 a.m.
    - Service Provider will provide the primary PolyOne contact with at least 48 hours notice of scheduled system downtime.

H.  Billing and Financial Reporting*

**Responsibilities of Service Provider:**
- Develop monthly billing statements for all locations and at least one main consolidated billing statement. The following types of bills will be generated:
    - Location Detail - consists of a structure group or combination of structure groups and shows all employees and the applicable coverages for all benefits. This is generally used to represent what each location is responsible for "paying" related to the monthly benefits.
    - Location Summary - summarizes the Location Detail and reflects the actual benefits costs/premiums.
    - Organization Summary - is a consolidation of each location and reflects the cumulative total benefit costs/premiums for all locations.
    - Vendor Detail - is a "list bill" by vendor for all applicable charges for the billing period.
    - Vendor Summary - is a summary by vendor for the specific amount owed to the vendor.
- On a monthly basis, apply debits and credits to bills based upon vendor rules.
- Provide final invoices and any changes or adjustments that are identified will be captured on the next month's cycle.

    *Service Provider has no fiduciary responsibility for payment owed to vendor. PolyOne is responsible for remitting all vendor/carrier payments.*

I.  Service Center

**Responsibilities of Service Provider:**
- Service Provider will set up the following services:
    - A telephone number to be utilized by the member population to contact Service Provider's Service Center or port an existing number already in use by the PolyOne.
    - Service Center hours of operation are 7:30 am to 7:00 pm Central Time, Monday through Friday excluding holidays.
    - Report, in a weekly scorecard, call statistics relating to call volume, average speed to answer, service level, and average talk time.
    - Service Provider Service Center supervisors will perform call monitoring, and results will be available to verify the quality of calls taken.
    - Attach call recordings to the member record and make available for review unless otherwise flagged for protected information.
    - Provide multi-lingual capabilities through "Language Line Services."
- Service Provider offers three levels of service within our platform. Service Provider will be supporting the following level of service:
    - *Concierge Support*
        - o Technical Support – password resets and system navigation
        - o Benefit questions

- o  Benefit enrollment and support calls
- o  Queue priority
- o  Dedicated client certified representatives
- o  Claims advocacy services
- o  Custom client outreach (not limited to but may include)
    - i.  Outbound support for new hires
    - ii.  Outbound support for Dependent Verification
    - iii.  Outbound reminders for open enrollment
    - iv.  Training available for employee before open enrollment on how to navigate the system
- Other services that are available include:
    - COBRA Administration and dedicated team within the Service Center to facilitate employee inquiries
    - Dependent Verification and team members within the Service Center to facilitate employee inquiries
    - Fulfillment and team members within the Service Center to facilitate employee inquiries

J.  Fulfillment Services
- Provide fulfillment services as outlined during the initial set-up and implementation.

K.  Leave of Absence ("LOA") Billing Services

**Responsibilities of Businessolver:**
- Initial Leave of Absence Billing Services:
    - Assemble and mail (via first class postage) LOA billing paperwork to new members on leave.
    - Notify Customer of any returned or undeliverable paperwork. Furthermore, Businessolver will mail an additional billing package if an updated address is provided.
    - Send payment coupon sheets to members on leave through the current year.
- Ongoing Administrative LOA Billing Services:
    - Compliance Services:
        - o  Provide electronic archival of payment history.
    - LOA Participant Services:
        - o  Businessolver will provide a toll-free LOA Billing Customer service number. Customer service shall be provided from 8:00 a.m. to 5:00 p.m. Central Standard Time.
- Accounting and Account Management Services:
    - Manage short payments or NSF payments provided by members on leave.
    - Provide and manage activities related to participants desiring ACH payment options.
    - Process LOA payment receivables and deposit payments to the Businessolver account.
- Web-based Services:
    - Provide Customer with the following web-based accesses:
        - o  Access to view LOA correspondence/documentation.
        - o  Access to view the status and payment history of members on leave.
        - o  Access to billing report.
- Open Enrollment Services:
    - Provide Customer with an address spreadsheet for Customer to use for sending open enrollment materials to members on leave.
- Optional Open Enrollment Services (*additional fees apply*):
    - Facilitate the production, assembly, and fulfillment of open enrollment kits for members on leave.
    - Provide electronic enrollment services for members on leave during the open/annual enrollment period.
    - Provide additional open enrollment materials and information to members on leave such as rate change notices, new payment coupons, and open enrollment alerts/communiqués.

L.  Retiree Billing Services

**Responsibilities of Businessolver:**
- Initial Retiree Billing Services:
    - Assemble and mail (via first class postage) retiree billing paperwork to new retirees.
    - Notify Customer of any returned or undeliverable paperwork. Furthermore, Businessolver will mail an additional billing package if an updated address is provided.
    - Process all valid elections received from retirees desiring coverage as well as the associated payments.
    - Send payment coupon sheets to retirees who elect coverage.
- Ongoing Administrative Retiree Billing Services:
    - Compliance Services:
        - o  Provide electronic archival of election history and payment history.
    - Retiree Participant Services:
        - o  Provide a toll-free Retiree Billing Customer service number. Customer service shall be provided from 8:00 a.m. to 5:00 p.m. Central Standard Time.

POLYONE 002119

- Accounting and Account Management Services:
  - Manage short payments or NSF payments provided by retiree participants.
  - Provide and manage activities related to participants desiring ACH payment options.
  - Process retiree payment receivables and will deposit payments to the Businessolver account.
- Web-based Services:
  - Provide the Customer with the following web-based accesses:
    - Access to view retiree correspondence/documentation.
    - Access to view the status and payment history of retirees.
    - Access to view retiree elections and election history.
    - Access to billing report.
- Open Enrollment Services:
  - Provide Customer with a set of mailing labels or an address spreadsheet for Customer to use for sending open enrollment materials to retirees.
- Optional Open Enrollment Services (*additional fees apply*):
  - Facilitate the production, assembly, and fulfillment of open enrollment kits for retiree participants.
  - Provide electronic enrollment services for retirees during the open/annual enrollment period.
  - Provide additional open enrollment materials and information to retirees such as rate change notices, new payment coupons, and open enrollment alerts/communiqués.

M.  Ongoing Dependent Verification Service Options

- Ongoing Dependent Verification Service - Affidavit Submission and Verification Process
  - Confirmations and Assumptions:
    - Any time a new dependent is added to medical, dental, or vision coverage, the entire transaction will pend, and the initial verification letter will generate. These are mailed to the member and eligibility documentation requirements are outlined.
    - Service Provider will identify parameters of acceptable documentation with the PolyOne. Listed below are Service Provider's standard set of acceptable document verification standards.

| Standard Services | |
|---|---|
| **Dependent Group Name** | **Dependent Proof List** |
| **Spouse** | Marriage Certificate<br>Official Court Documentation<br>Common Law Spouse Affidavit<br>and/or Current Tax Return<br>(with Dependent Listed) |
| **Dependent Child** | Adoption Certificate<br>Legal Guardianship Documentation<br>Birth Certificate or<br>Hospital documentation reflecting the child's birth(only if the child is under 6 months of age)<br>and/or Current Tax Return<br>(with Dependent Listed) |
| **Step Dependent Child** | Adoption Certificate<br>Legal Guardianship Documentation<br>Birth Certificate or<br>Hospital documentation reflecting the child's birth(only if the child is under 6 months of age)<br>and/or Current Tax Return<br>(with Dependent Listed) |
| **Domestic Partner** | Affidavit<br>Proof of financial interdependence |
| **Child of Domestic Partner** | Affidavit<br>Birth Certificate that reflects |

POLYONE 002120

- o Pending the receipt of the required information, no new information will be sent to the carrier until the pending transaction is approved.  For new hire status employees, this means no information about the member or dependents will be sent to the carrier(s) until all dependent documentation is received, applied, and the transaction is approved.
- o The required documentation for such changes would be sent by the member to Service Provider either by fax, mail, or utilizing the document upload feature in Benefitsolver. Upon receipt of documentation, Service Provider staff will load the documents to the member's system record.
- o Documentation is typically required to be submitted within (15) days of the transaction.
- o Once all required documentation is received, Service Provider staff will approve the pending transaction and enter a verified date on the dependent's record.
- o If documentation is received but does not meet the verification requirements, a resubmit soft copy letter will be provided to the member advising them that additional documentation is required.
- o If partial documentation is submitted to Service Provider by a member, Service Provider staff will approve the transaction on any members and dependents that provided the required verification documentation.
- o If documentation is not provided within the allowed timeframe, Service Provider staff will deny the transaction and send a notification unless the member is adding coverage for the first time, for example, new hire

N. Qualified Medical Child Support Orders

**Responsibilities of Service Provider**
- Receive QMCSO Setup requests
- Identify the applicable dependents and update the relationship within the system to reflect the "Court Ordered" status restricting changes from being made to the member unless processed by an administrator.
- Allow members to upload and submit applicable documentation through the case management tool for review by PolyOne's administrators.

O. QMCSO Qualification

- Receive QMCSO documents
- Review to ensure that it meets the requirements
- Provide required documentation to the proper government agency.
- Identify the applicable dependents and update the relationship within the system to reflect the "Court Ordered" status restricting changes from being made to the member unless processed by an administrator

POLYONE 002121



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed:**
**December 19, 2019 11:25**

By: SCOTT D. PERLMUTER 0082856

Confirmation Nbr. 1897960

| | |
|---|---|
| MAUREEN MATHEWS | CV 19 926819 |
| vs. | |
| BUSINESSOLVER, INC. | **Judge:**  ROBERT C. MCCLELLAND |

**Pages Filed:**  31